**In re Judy WILBORN, Debtor.**

**Judy C. Wilborn, Karlton E. Flournoy, Monica E. Flournoy, and Judith A. Martin on behalf of themselves and those similarly situated, Plaintiffs,**

v.

**Wells Fargo Bank, N.A., f/k/a Wells Fargo Home Mortgage, Inc., Defendant.**

**Bankruptcy No. 03–48263–H4–13. Adversary No. 07–03481.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 24, 2009.

Johnie J. Patterson, Michael Glen Walker, Miriam Trubek Goott, Walker & Patterson, P.C., Houston, TX, for Plaintiffs.

Elizabeth Carol Freeman, W. Steven Bryant, Locke Lord Bissell & Liddell LLP, Houston, TX, Thomas A. Connop, Locke Lord Bissell & Liddell LLP, Dallas, TX, for Defendant.

## MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

JEFF BOHM, Bankruptcy Judge.

### I. INTRODUCTION

The Plaintiffs' Complaint alleges that defendant, Wells Fargo, N.A., f/k/a Wells Fargo Home Mortgage, Inc. (Wells Fargo), accumulated or charged, and on occasion collected, attorneys' fees, costs, and other charges from Chapter 13 debtors without the appropriate disclosures or court approval as mandated by the United States Bankruptcy Code and Federal Bankruptcy Rules.[1] Specifically, the Plaintiffs allege that Wells Fargo purposefully avoided the requirements of 11 U.S.C. § 506(b) and Federal Rule of Bankruptcy Procedure 2016 (Bankruptcy Rule 2016) and charged unreasonable fees and costs to the Plaintiffs during the pendency of their respective bankruptcy cases without disclosure to the Court. [Adv. Docket No. 1, ¶ 82.] Through the Complaint, the Plaintiffs seek "to remedy Defendant's pattern and practice of ignoring postpetition requirements of the Bankruptcy Code and Rules as they govern professional fees and costs/expenses." [Adv. Docket No. 1, ¶ 1.]

The named Plaintiffs, Judy Wilborn, Karlton and Monica Flournoy, and Judith Martin, have requested the Court to certify a class in this adversary proceeding. There is no doubt that a bankruptcy court may adjudicate a class action lawsuit pursuant to Bankruptcy Rule 7023. Fed. R. Bankr.P. 7023; *see In re Talbert,* 347 B.R. 804 (Bankr.E.D.La.2005). The issue addressed in this Memorandum Opinion is whether this particular class of Plaintiffs may be certified as a class.

■ The decision whether to certify a class is within this Court's discretion. *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996). In determining whether a class should be certified, the merits of the case are not to be examined and the substantive allegations of the complaint are to be taken as true. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Federal Rule of Civil Procedure 23 (Rule 23), incorporated by Bankruptcy Rule 7023, governs in adversary proceedings filed in bankruptcy court. Class certification requires an inquiry into whether the requirements of Rule 23 are met rather than whether the plaintiffs have stated a cause of action or will prevail on the merits. *Id.* at 178, 94 S.Ct. 2140. The party seeking class certification has the burden of proving that each requirement of Rule 23 is satisfied. *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir.2002); *Zeidman v. J. Ray McDermott Co.,* 651 F.2d 1030, 1038 (5th Cir.

---

1. Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e. § ) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

1981) ("A plaintiff who seeks to certify his suit as a class action under Rule 23 must establish a number of specific prerequisites, and in each case the burden of proof is on the plaintiff who seeks to thus certify his suit.").

This Memorandum Opinion will address whether the Motion for Class Certification should be granted based on the facts set forth in the Complaint, the exhibits introduced at the hearings, and the arguments and stipulations made by counsel in open court. Set forth below are the Court's written findings of fact and conclusions of law. The Court reserves its right to make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties. As set forth below, the Plaintiffs have met the requirements of Rule 23; therefore, class certification is appropriate in this suit.

## II. FINDINGS OF FACT

1. On November 16, 2007, Judy Wilborn (Wilborn), Karlton and Monica Flournoy (the Flournoys), and Judith Martin (Martin), on behalf of themselves and others similarly situated (collectively, the Plaintiffs), filed their complaint against Wells Fargo.

2. The four named Plaintiffs are debtors in the following Southern District of Texas Chapter 13 bankruptcy cases: *In re Wilborn*, Case No. 03–48263–H4–13; *In re Flournoy*, Case No. 03–38670–H3–13; and *In re Martin*, Case No. 05–81390–H3–13. All of these cases were filed in the United States Bankruptcy Court for the Southern District of Texas.

3. In the Plaintiffs' Complaint—Class Action (the Complaint), the Plaintiffs allege that Wells Fargo charged, or charged and collected, attorneys' fees and costs in the course of Plaintiffs' respective Chapter 13 bankruptcy cases without court approval and therefore disregarded the requirements of 11 U.S.C. § 506(b) and Bankruptcy Rule 2016. [Adv. Docket No. 1, 12.]

4. Plaintiffs seek to represent a similarly situated class defined as:

> All individuals who filed for bankruptcy under chapter 13 in the Southern District Of Texas and owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo charged or assessed professional fees and costs during the pendency of the bankruptcy proceeding which were never disclosed to the bankruptcy court, the debtor or other parties-in-interest nor approved by the court by written order entered in the particular bankruptcy case.

[Adv. Docket No. 1, ¶ 88.]

5. In the Complaint, Plaintiffs seek the following relief:

a. A declaration that undisclosed fees and costs are *per se* unreasonable, awarding Plaintiffs and class members incidental, equitable disgorgement of any unreasonable fees and costs actually collected;

b. Awarding Plaintiffs and class members a permanent injunction which enjoins [Wells Fargo] from charging and/or assessing individual mortgage accounts for professional fees and/or costs which are incurred or which accrue during the time a bankruptcy case is pending without first seeking approval from the Bankruptcy Court;

c. Awarding Plaintiffs and class members pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, disbursement and accounting fees, class costs and other costs of litigation;

d. Sanctions for [Wells Fargo's] intentional disregard of the Bankruptcy Code and Rules and for its pattern

and practice of violating the Bankruptcy Code and Rules for self-gain; and

e. Such other relief, at law or in equity, to which the Plaintiffs and class members may show themselves justly entitled.

[Adv. Docket No. 1, pp. 15–16.]

6. On January 18, 2008, Wells Fargo filed its Answer to Plaintiffs' Class Action Complaint (the Answer). [Adv. Docket No. 7.]

7. On July 15, 2008, the Plaintiffs filed the Plaintiffs' Motion for Class Certification [Adv. Docket No. 51] as well as Plaintiffs' Brief in Support of Motion for Class Certification. [Adv. Docket No. 52.]

8. The Plaintiffs assert that they are similarly situated to the other putative class members who have been charged, and on occasion, paid, undisclosed fees and costs by Wells Fargo during their respective bankruptcy proceedings.

9. Indeed, through exhibits, Plaintiffs have introduced certain actions taken by Wells Fargo for which Wells Fargo has charged the Plaintiffs fees and costs without obtaining Court approval. For example, Plaintiffs' Exhibit Number 6 reflects that ten (10) inspections were performed by Wells Fargo and that Wilborn was charged for each inspection without approval from the Bankruptcy Court.[2] Additionally, Plaintiffs' Exhibit Numbers 11 and 17 reference inspections for which the Flournoys and Martin, respectively, were also charged without Wells Fargo obtaining approval from the Court.

10. On September 10, 2008, Wells Fargo filed its Response to Plaintiffs' Emergency Motion to Compel Production. [Adv. Docket No. 65.] This Response stated that on August 1, 2008, Wells Fargo provided the following information to Plaintiffs as required by this Court's July 23, 2008 Order Allowing Withdrawal of Motion for Order of Civil Contempt Against Wells Fargo Bank, N.A. (the July 23, 2008 Order) [Adv. Docket No. 54]:

a. The total number of Chapter 13 loans it has serviced in the Southern District of Texas bankruptcy courts for Chapter 13 proceedings filed between January 1, 2005 through March 31, 2008;[3]

b. Certain agreed upon reports for fifty (50) randomly selected, active loans, serviced from within the above indicated time period, with activity reported for the last two (2) years; and

c. Certain agreed upon reports for an additional eighteen (18) active loans for borrowers who were previously (or are currently) in a Chapter 13 case in the Southern District of Texas.

11. On September 5, 2008, Wells Fargo filed Wells Fargo Home Mortgage's Response in Opposition to Plaintiffs' Motion for Class Certification (the Response). [Adv. Docket No. 63.]

12. On October 6, 2008, the Plaintiffs filed their Reply in Support of Motion for Class Certification. [Adv. Docket No. 71.]

13. On November 19, 2008, the Court held a hearing, and counsel for the Plaintiffs represented to the Court the following information about the number of potential class members:

a. Of the sixty-eight (68) debtors about whom Wells Fargo provided informa-

---

2. According to the docket sheet in Wilborn's individual bankruptcy case, Wells Fargo has never requested approval, nor has this Court ever approved, any fees for the inspections performed by Wells Fargo. [Case No. 03–48263, Docket No. 23.]

3. The total number is 1,752. [Plaintiffs' Ex. 20, p. 2.]

tion pursuant to the Court's July 23, 2008 Order, two (2) of the sixty-eight (68) had no recoverable bankruptcy fees and eighteen (18) of the remaining sixty-six (66) had fees which were approved by the Court, leaving forty-eight (48) debtors with recoverable bankruptcy fees which were not approved at all, or which were only approved in part. From this sampling, the percentage of debtors with recoverable fees is approximately 70.6% (i.e. 48 divided by 68 equals .706, or 70.6%).

b. Between January 1, 2005 and March 31, 2008, Wells Fargo serviced 1,752 mortgages for customers who had also filed Chapter 13 cases in the Southern District of Texas. Additionally, as shown in Plaintiffs' Exhibit Number 20, Wells Fargo has stipulated that it had 1,752 loans in Chapter 13 bankruptcy in the Southern District of Texas with petition dates between January 1, 2005 and March 31, 2008.[Plaintiffs' Ex. 20, p. 2.]

c. If the sample data provided on the sixty-eight (68) debtors is indicative of Wells Fargo's practices, then that translates to 1,236 debtors as potential class members (i.e. 1,752 mortgages multiplied by .706 equals 1,236 potential class members).

14. The Plaintiffs request that Wells Fargo be enjoined from collecting fees charged against the Plaintiffs' respective mortgage accounts in violation of § 506(b) and Bankruptcy Rule 2016. Additionally, for the fees that Wells Fargo has already collected, the Plaintiffs ask that Wells Fargo disgorge those funds, less any fees that this Court has already approved.

15. Wells Fargo has stipulated to the admissibility of all exhibits except Plaintiffs' Exhibit Numbers 2 and 20, which were both admitted as demonstrative summaries only. At the hearings held on October 31, 2008 and November 19, 2008, counsel for Wells Fargo, Thomas A. Connop, stated on the record that with regard to Plaintiffs' Exhibit Numbers 2 and 20, Wells Fargo does not agree that the column headings are accurate, nor does Wells Fargo concede to the amounts listed in the columns. Plaintiffs' Exhibit Number 20 has been admitted only as a demonstrative summary of the Plaintiffs' allegations. Wells Fargo does not concede to any language that may be construed as argument of Plaintiffs' counsel. [tape recording of hearing from Nov. 19, 2008.] Plaintiffs' Exhibit Number 20 is attached hereto as Addendum A.[4]

16. For the four named Plaintiffs, Plaintiffs' Exhibit Number 2 sets forth the amounts of fees allegedly charged and collected by Wells Fargo, any fees approved by Court orders, as well as the amounts to be disgorged and the amounts that Wells

---

4. After this Court held a hearing on February 20, 2009, Plaintiffs' counsel submitted a Certificate of Information on February 28, 2009 with an amended Plaintiffs' Exhibit Number 2 which is attached hereto as Addendum B. [Adv. Docket No. 85.] In this amended Plaintiffs' Exhibit Number 2, Plaintiffs' counsel corrected mathematical errors for the "Fees Charged" and "Amount Enjoined" figures for the Flournoys and Wilborn. However, Plaintiffs' counsel never amended Plaintiffs' Exhibit Number 20 to insert the corrected figures from the amended Plaintiffs' Exhibit Number

2. The Court notes that the "Fees Charged" and "Amount Enjoined" figures in the amended Plaintiffs' Exhibit Number 2 are the correct figures. The incorrect figures in Plaintiffs' Exhibit Number 20 are $3,271.42 for the "Fees Charged" in the Flournoys' case (the figure should be $3,146.46, as set forth in the amended Plaintiffs' Exhibit Number 2) and $3,524.70 for the "Fees Charged" in the Wilborn case (the figure should be $4,024.70, also as set forth in the amended Plaintiffs' Exhibit Number 2).

Fargo is to be enjoined from collecting.[5] Plaintiffs' Exhibit Number 2 is attached hereto as Addendum B. In sum, Plaintiffs' Exhibit Number 2 contains the following information:

 a. The Flournoys were charged fees of $3,146.46, and $600.00 of those fees were approved, leaving $2,546.46 as the amount sought to be enjoined.[6]

 b. In Martin's first bankruptcy case (Case No. 03–40820), she was charged fees of $2,085.25, and $450.00 of those fees were approved,[7] leaving $1,635.25 as the amount sought to be enjoined. In Martin's second bankruptcy case (Case No. 05–81390), she was charged fees of $1,225.09, and none of these fees were approved, leaving $1,225.09 as the amount sought to be enjoined.

 c. Wilborn was charged fees of $4,024.70, and none of these fees were approved,[8] leaving all $4,024.70 as the amount sought to be enjoined.

17. At the November 19, 2008 hearing, Plaintiffs' counsel represented to the Court that the potential amount of improper fees charged by Wells Fargo for each of the debtors in the sample set ranges from approximately $0 to $2,600.00, as shown in Plaintiffs' Exhibit Number 20. Plaintiffs' counsel also stated that these numbers are a conservative estimate of the potential dollar amounts involved.

## III. CONCLUSIONS OF LAW

In reaching the following conclusions of law on the issue of class certification, this Court, as instructed by the United States Supreme Court in *Eisen v. Carlisle & Jacquelin*, will not examine the merits of the case and will take the substantive allegations of the Complaint as true. 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### A. Jurisdiction and Venue[9]

 **1. Subject Matter Jurisdiction under 28 U.S.C. §§ 1334 and 157 over Chapter 13 Cases Presently Pending in the Southern District of Texas.**

The United States Code sets forth that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.

---

5. At the November 19, 2008 hearing, Plaintiffs' counsel represented to the Court that upon certification of the class, a chart for all class members similar to Plaintiffs' Exhibit Number 2 could be created for ease of administering the class.

6. Plaintiffs' Ex. 9 (the Agreed Order Modifying Stay in the Flournoys' Chapter 13 case approving the collection by Wells Fargo of $600.00 in attorneys' fees). It is important to distinguish between the word "charge" and the word "collect." Here, Wells Fargo charged fees of $3,146.46 and obtained this Court's approval for $600.00 of these fees. Yet, Wells Fargo has never actually collected the $3,146.46. It is authorized to collect the $600.00 which this Court has approved, but it is not authorized to collect more than $600.00 or, for that matter, to charge more than $600.00. Because it has charged $3,146.46, and because only $600.00 has been approved, the Plaintiffs seek to enjoin Wells Fargo from collecting the difference—i.e. $2,546.46.

7. Plaintiffs' Ex. 14 (the Agreed Order Modifying Stay in Martin's bankruptcy case 03–40820 approving the collection by Wells Fargo of $450.00 in attorneys' fees).

8. Plaintiffs' Ex. 4 (the Agreed Order Modifying Stay in Wilborn's bankruptcy case 03–48263).

9. A comprehensive discussion of this Court's jurisdiction to adjudicate the dispute at bar is set forth in this Court's Memorandum Opinion on Wells Fargo Home Mortgage's Motion to Dismiss Adversary Proceeding for Lack of Subject Matter Jurisdiction. [Adv. Docket No. 79]; *see Wilborn v. Wells Fargo (In re Wilborn)*, 401 B.R. 872 (Bankr.S.D.Tex.2009).

§ 1334(b). Furthermore, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The United States District Court for the Southern District of Texas maintains a "General Order of Reference" that provides, in pertinent part, that "[b]ankruptcy cases and proceedings arising under Title 11 of the United States Code are automatically referred to the bankruptcy judges of this district." *See* 2005 General Order of Reference.

■ This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This adversary proceeding relates to the following Southern District of Texas Chapter 13 bankruptcy cases: *In re Wilborn,* Case No. 03–48263–H4–13; *In re Flournoy,* Case No. 03–38670–H3–13; and *In re Martin,* Case No. 05–81390–H3–13. [Finding of Fact No. 2.] The named Plaintiffs and all putative class members, according to the Plaintiffs' class definition, have cases in only the United States Bankruptcy Court for the Southern District of Texas. [Finding of Fact No. 4.] " 'At the very least a bankruptcy court may exercise subject matter jurisdiction over the claims of debtors whose underlying cases were filed in that court's district. A contrary holding would effectively read Bankruptcy Rule 7023 ('Class Proceedings') out of the law entirely.' " *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez),* 396 B.R. 436, 452 (Bankr.S.D.Tex.2008) (quoting *In re Tate,* 253 B.R. 653, 654 (Bankr. W.D.N.C.2000)).

This Court has previously maintained jurisdiction in a suit that was factually similar to the pending proceeding where a defendant lender charged a Chapter 13 debtor/plaintiff undisclosed fees and expenses. *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez),* 372 B.R. 289, 302 (Bankr.S.D.Tex.2007). Specifically, *Sanchez* stated:

> The Defendant assessed the Plaintiffs pre-confirmation and post-confirmation charges, but did not disclose these charges to the Plaintiffs, the Trustee, or the Court. These charges were then paid from monies delivered by the Trustee—that is, from property of the estate—that were intended to satisfy the mortgage payment. Any amounts charged by the Defendant "correspondingly enlarge the debt of the estate, make reorganization more difficult for the debtor, and adversely impact upon the claims of the remaining creditors." *Jones v. Wells Fargo (In re Jones),* 366 B.R. 584, 594–95 (Bankr.E.D.La.2007) (quoting *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051, 1055 (5th Cir.1986)). Thus, because the Defendant satisfied its undisclosed charges from property of the Plaintiffs' estate and thereby directly affected the Amended Plan, this Court has jurisdiction over the controversy, and may further determine whether the claims are appropriate under applicable law. *Id.* at 595–96.

*In re Sanchez,* 372 B.R. at 302.

■ The above-described fact scenario from *Sanchez* is, in significant part, equivalent to the subject matter of the individual claims in this adversary proceeding. Thus, pursuant to *Sanchez,* this Court may exercise jurisdiction over the individual claims in this adversary proceeding. If a court is able to establish jurisdiction over the claims of each member of a class, that court may also exercise jurisdiction over the properly formed class. *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) ("Where the district court has jurisdiction over the claim of each individual member of the

class, Rule 23 provides a procedure by which the court may exercise that jurisdiction over the various individual claims in a single proceeding."). Thus, because this Court has jurisdiction over the individual claims, this Court has jurisdiction over the class as a whole.

 If a bankruptcy court has jurisdiction under 28 U.S.C. § 1334, the next determination is whether the suit is a core or non-core proceeding. A bankruptcy judge has full adjudicative power over a core proceeding. *In re Keener*, No. 07–3494, 2008 WL 912933, at *2 (Bankr. S.D.Tex. Apr.2, 2008). A non-exclusive list of core proceedings is set forth in 28 U.S.C. § 157(b)(2). Pursuant to Fifth Circuit case law, the determination of whether a proceeding is core or non-core is properly focused on whether the rights to be adjudicated arise from the Bankruptcy Code or some other substantive law. *In re Harris*, No. 08–3014, 2008 WL 924939, at *2 (Bankr.S.D.Tex. Apr.4, 2008). Specifically, "[i]f the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding." *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir.1987).

 This suit between the Plaintiffs and Wells Fargo invokes substantive rights created only under federal bankruptcy law. Specifically, the Plaintiffs' claims are based upon 11 U.S.C. § 506(b) and Bankruptcy Rule 2016. Therefore, this Court has jurisdiction to issue a final judgement in this suit, as it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (K), and (O).[10] Additionally, these two matters are core proceedings under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir.1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06–3556, 2006 WL 3805670, at *19 (Bankr.S.D.Tex. Dec.22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").[11]

---

**10.** 28 U.S.C. § 157(b)(2) provides, in pertinent part:

> Core proceedings include, but are not limited to—
> (A) matters concerning the administration of the estate;
> ....
> (C) counterclaims by the estate against persons filing claims against the estate;
> ....
> (K) determinations of the validity, extent, or priority of liens;
> ....
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).

**11.** Even though some of the putative class members have confirmed plans, this Court

would still retain jurisdiction over those post-confirmation Chapter 13 cases because a bankruptcy estate still exists post-confirmation. In *Sanchez*, this Court held that the Chapter 13 estate remains open if the plan or the order confirming the plan provides as such, and other bankruptcy courts have agreed with this assessment. *In re Sanchez*, 372 B.R. at 301–02; *see also, e.g., In re Colon*, 345 B.R. 723, 727 (Bankr.D.Kan.2005) (determining that the Chapter 13 estate continues to exist if the plan or the order confirming it provides as such). Additionally, some bankruptcy courts have determined that the Chapter 13 estate remains in place post-confirmation to include the debtor's newly acquired property. *See, e.g., Barbosa v. Soloman*, 235 F.3d 31, 37 (1st Cir.2000) (determining that the Chapter 13 estate continues to exist post-confirmation and continues to be funded by the debtor's regular income); *In re Van Stelle*, 354 B.R. 157, 170–71 (Bankr.W.D.Mich.2006)

Additionally, venue is proper pursuant to 28 U.S.C. § 1409(a).

### 2. Subject Matter Jurisdiction Over Closed Cases that Were Filed in the Southern District of Texas.

 "[B]ankruptcy courts retain significant jurisdiction after a discharge order is issued and a case is closed." *In re Rodriguez*, 396 B.R. at 452. The Court's subject matter jurisdiction over closed cases extends to violations of 11 U.S.C. § 506 and Bankruptcy Rule 2016 during the pendency of the case. The Fifth Circuit has held that after a bankruptcy case is closed, the bankruptcy court retains subject matter jurisdiction to protect a debtor's rights under the Bankruptcy Code. *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir.2001); *In re Bradley*, 989 F.2d 802, 804–05 (5th Cir. 1993). To the extent that there are class members whose bankruptcy cases have been closed, the Court retains jurisdiction

(determining that the Chapter 13 estate continues post-confirmation regardless of whether all the pre-confirmation property of the estate re-vests in the debtor). *United States v. Holden*, 258 B.R. 323, 326 (D.Vt.2000) (determining that even though the pre-confirmation chapter 13 estate may re-vest in the debtor, the post-confirmation Chapter 13 estate continues to consist of property that the debtor acquires post-confirmation). Others have determined that the Chapter 13 estate exists post-confirmation but that it is comprised solely of property acquired by the debtor that is necessary to fund the plan. *See, e.g., Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir.1997) (determining that the Chapter 13 estate consists only of income received by the debtor necessary to fund the plan); *In re Foreman*, 378 B.R. 717, 721–22 (Bankr.S.D.Ga.2007) (determining that the post-confirmation Chapter 13 estate consists only of property acquired by the debtor post-confirmation that is required for plan payments).

over those class members' cases for the purposes of this adversary proceeding.

### 3. Subject Matter Jurisdiction Over Cases Converted to Chapter 7 that Were Initially Filed in the Southern District of Texas as Chapter 13 Cases

The fees and costs at issue in this suit could only have arisen in Chapter 13 cases. If there are class members whose cases were converted from a Chapter 13 to a Chapter 7, the Court retains jurisdiction over these cases. Conversion to a Chapter 7 has no effect on any class members' claims which arose prior to conversion. *See* 11 U.S.C. § 348(f)(1); *see also* Fed. R. Bankr.P. 1019(1)(A) ("Lists, inventories, schedules, and statements of financial affairs theretofore filed shall be deemed to be filed in the chapter 7 case, unless the court directs otherwise.").

Wells Fargo argues in its Response that none of the potential class members whose cases were converted to Chapter 7 should be a part of the class, and that, therefore,

Here, because the named Plaintiffs' plans provide that their respective Chapter 13 estates shall remain open until a discharge is granted—the typical plan language is that "[p]roperty of the estate shall vest in the debtors upon entry of the discharge order"—their bankruptcy estates will remain open post-confirmation pursuant to this Court's holding in *Sanchez*. *In re Sanchez*, 372 B.R. at 301–02. Moreover, this Court also has core jurisdiction over claims, such as those brought by the Plaintiffs, that "arise under" the Bankruptcy Code even though a debtor's Chapter 13 case may be closed. Indeed, by setting out a separate category of jurisdiction for those proceedings that "arise in" a debtor's bankruptcy case, Congress evinced its intention that § 1334(b)'s alternative provision for "arising under" jurisdiction *not* be conditioned on whether a particular bankruptcy case remains open. Congress could have limited "arising under" jurisdiction to claims "arising under title 11 *and* arising in a case under title 11," but it did not. Congress chose to list the categories of jurisdiction conjunctively.

the class definition must be adjusted accordingly. [Adv. Docket No. 63, ¶ 16.] The Court recognizes that for those class members whose Chapter 13 cases were converted to Chapter 7, a Chapter 7 trustee would necessarily be indirectly involved in the class action. However, the necessity of having a Chapter 7 trustee administer those class members' claims does not mean that the Court does not retain subject matter jurisdiction over the converted cases.[12]

### 4. Subject Matter Jurisdiction Over Dismissed Cases that Were Filed in the Southern District of Texas as Chapter 13 Cases.

Similar to the analysis on the Court's jurisdiction over closed cases, the Court likewise retains subject matter jurisdiction over the class members whose Chapter 13

cases were dismissed. *See* 11 U.S.C. § 349 (listing the effects of dismissal on the underlying bankruptcy case); *see also In re Querner*, 7 F.3d 1199, 1201–02 (5th Cir.1993) ("[N]othing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case.... The decision to retain jurisdiction over related proceedings rests within the sound discretion of the bankruptcy court." (internal citations omitted)).

If fees and costs were charged or collected during the bankruptcies of the Plaintiffs in violation of the Code and Rules, then the Court retains jurisdiction to review the actions taken by Wells Fargo during the pendency of the Chapter 13 case regardless of whether the case was thereafter closed, converted, or dismissed. *See supra* Parts III.A.2, 3, and 4.

---

**12.** Although Wells Fargo has not raised the issue, those purported class members whose Chapter 13 cases have been converted to Chapter 7 would have standing along with the Chapter 7 trustee to prosecute the cause of action asserted by the Plaintiffs because the Plaintiffs have sought predominantly declaratory and injunctive relief. If the Plaintiffs had brought a suit seeking only money damages, the individual Chapter 7 debtors would probably not have a present, substantial interest in the outcome of the suit because they most likely lack a pecuniary interest in the property of the Chapter 7 estate. This is so because, in Chapter 7 cases, the trustee is the sole representative of the estate pursuant to 11 U.S.C. § 323(a), and all lawsuits for money damages would inure to the benefit of the estate rather than the individual Chapter 7 debtor—except under the limited exception where a debtor, under applicable law, is able to claim an exemption of some or all of the proceeds recovered in the lawsuit. However, in a suit seeking declaratory or injunctive relief, a Chapter 7 debtor does have a present, substantial interest, and therefore does have standing to prosecute the suit. *See, e.g., Wyatt v. Nowlin (In re Wyatt)*, 338 B.R. 76, 78–79 (Bankr.W.D.Mo.2006) ("That a bankruptcy court has jurisdiction to hear, and a [Chapter

7] debtor has standing to seek declaratory relief regarding debtor's property, is a proposition so obvious and inherent in the bankruptcy system created by federal legislation ...."); *see also Brae Asset Fund, Ltd. P'ship v. Kelly (In re Kelly)*, 223 B.R. 50, 56 (D.Mass. 1998) (same). Courts have also recognized another exception to the general rule that a Chapter 7 debtor does not have standing to prosecute lawsuits: the debtor does have standing to prosecute a lawsuit for violation of the discharge order. *See, e.g., Martin v. O'Connor (In re Martin)*, 201 B.R. 338, 343–44 (Bankr.N.D.N.Y.) (acknowledging that a Chapter 13 debtor has standing to bring lawsuits that "affect[ ] the terms of the debtor's discharge in bankruptcy"). Here, if the Plaintiffs' allegations are true—as they must be taken to be for the purposes of class certification—Wells Fargo's practice of charging fees during the pendency of the purported class members' bankruptcy cases might very well have violated the discharge injunction. *See Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 455–56 (Bankr.S.D.Tex.2008). Thus, those purported class members whose Chapter 13 cases were converted to Chapter 7 would have standing to prosecute the lawsuit brought on their behalf by the Plaintiffs.

## B. The Class Definition Is Proper.

### 1. Class Definition

■■■ "[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *De Bremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970). This Court, however, "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Lundquist v. Sec. Pac. Automotive Fin. Servs. Corp.,* 993 F.2d 11, 14 (2d Cir.1993) (quoting *Robidoux v. Celani,* 987 F.2d 931, 937 (2d Cir.1993)). As the Fifth Circuit has recognized, "holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *In re Monumental Life Ins. Co.,* 365 F.3d at 414. Therefore, based on the Fifth Circuit's determination that the certifying court is "permitted to limit or modify class definitions to provide necessary precision," *id.,* this Court will modify the Plaintiffs' class definition in the following respects:

First, this Court will modify the class definition to include a reasonable temporal boundary. Courts have refused to certify a class that does not contain any temporal limitation in the class definition. *See, e.g., Vickers v. Gen. Motors Corp.,* 204 F.R.D. 476, 477–78 (D.Kan.2001) (refusing to certify a class, in part, because the class definition contained no temporal limitation); *Dunn v. Midwest Buslines, Inc.,* 94 F.R.D. 170, 172 (E.D.Ark.1982) (same); *In re Monumental Life Ins. Co.,* 365 F.3d at

414. The Court finds that the five-year period prior to the filing of this class action lawsuit—i.e. November 16, 2002 through November 16, 2007—is a reasonable temporal limitation.[13] Thus, the Court will modify the class definition as follows:

> All individuals who filed for bankruptcy under Chapter 13 in the Southern District of Texas *between November 16, 2002 and November 16, 2007* who owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo charged or assessed professional fees and costs during the pendency of the bankruptcy proceeding which were never disclosed to the bankruptcy court, the debtor or other parties-in-interest nor approved by the court by written order entered in the particular bankruptcy case.

Second, the Court will modify the class definition to comport with the relief sought by the Plaintiffs. Specifically, the Plaintiffs have defined the class to include Chapter 13 debtors "upon whom Wells Fargo charged or assessed professional fees and costs." However, the Plaintiffs have requested that this Court award "equitable disgorgement of any unreasonable fees and costs *actually collected*" by Wells Fargo, (emphasis added). [Finding of Fact No. 5.] Therefore, it appears that the Plaintiffs have used the phrase "charged or assessed" even though they have requested equitable relief based on fees that were charged or actually *collected.* The word "charge" is a synonym of the word "assess." Rogert's International Thesaurus 630.12 (6th ed.2001). The word "collect" means to actually receive payment.

---

13. The Plaintiffs filed their Complaint on November 16, 2007. [Finding of Fact No. 1.] Because all of the named Plaintiffs' Chapter 13 bankruptcy petitions were filed in 2003 except for Martin's second bankruptcy petition, the Court finds this time period to be

appropriate. Therefore, pursuant to the Court's authority to modify the class definition to add the necessary precision, the Court adds this reasonable temporal limitation to the class definition.

Merriam–Webster's Collegiate Dictionary 225 (10th ed.2001). Additionally, although the Plaintiffs' class definition does not actually contain the word "collect," counsel for the Plaintiffs has used the word throughout the hearings in this adversary proceeding. Therefore, the Court will modify the class definition as follows to ensure that it conforms with the relief requested by the Plaintiffs:

> All individuals who filed for bankruptcy under Chapter 13 in the Southern District of Texas between November 16, 2002 through November 16, 2007 who owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo **either charged, or both charged and collected,** professional fees and costs during the pendency of the bankruptcy proceeding which were never disclosed to the bankruptcy court, the debtor or other parties-in-interest nor approved by the court by written order entered in the particular bankruptcy case.

Third, the Court makes the following linguistic changes to make the purported class members and their respective bankruptcy cases [14] more ascertainable and to clarify that the Plaintiffs are seeking relief from this Court [15] and not another bankruptcy court:

> All individuals who filed for bankruptcy under Chapter 13 in the Southern District of Texas between November 16, 2002 through November 16, 2007 who owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo either charged, or both charged and collected, professional fees and costs during the pendency of *each of their respective bankruptcy* cases which were never disclosed to *this Court,* the debtors. or other parties-in-interest nor approved by *this Court* by written order entered *on the docket in their respective* bankruptcy cases.

Accordingly, the class definition, with all of the aforementioned modifications, is as follows:

> All individuals who filed for bankruptcy under Chapter 13 in the Southern District of Texas between November 16, 2002 through November 16, 2007 who owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo either charged, or both charged and collected, professional fees and costs during the pendency of each of their respective bankruptcy cases which were never disclosed to this Court, the debtors, or other parties-in-interest nor approved by this Court by written order entered on the docket in their respective bankruptcy cases.

This definition is proper because "the class sought to be represented [is] adequately defined and clearly ascertainable." *De Bremaecker,* 433 F.2d at 734.

---

**14.** The Court notes that the Plaintiffs use the phrase "bankruptcy proceeding" rather than "bankruptcy case." The word "proceeding" should be replaced with the word "case" in this instance. "The term 'case' ... refers to the overall spectrum of legal action taken under one of the debtor relief chapters. It is the widest term functionally. The term 'proceeding,' by contrast, refers to any particular action raised or commenced within the case, including motions and adversary proceedings, whether such actions raise disputed or consensual matters." 2 Collier on Bankruptcy ¶ 301.03 (Matthew Bender 15th ed. rev.) (quoting the former Bankruptcy Rule 101 advisory committee's note).

**15.** "This Court" means the United States Bankruptcy Court for the Southern District of Texas regardless of the particular judge presiding over the case.

## 2. Boundary of Time

■ Wells Fargo argues that the Plaintiffs have failed to provide a workable definition that makes the class members ascertainable because there is no boundary of time. [Adv. Docket No. 63, ¶ 13.] To the extent that Wells Fargo argues that the Plaintiffs are barred from bringing this action because the limitations period has run, Wells Fargo's argument must fail. The limitations defense set forth by Wells Fargo is an affirmative defense that must be expressly pled. Fed. R. Bankr.P. 7008(c). Of the thirteen (13) affirmative defenses that Wells Fargo pled in its Answer, limitations was not one of those. [Adv. Docket No. 7, ¶¶ 115–27.] Thus, because the limitations defense was not expressly pled in the Answer, Wells Fargo may not assert it as an affirmative defense. *See* Fed.R.Civ.P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including ... statute of limitations."); *Combee v. Shell Oil Co.*, 615 F.2d 698, 700 (5th Cir.1980) (stating that the defense of statute of limitations must be affirmatively pled in a party's defensive pleading, and failure to do so waives the defense unless the party corrects the failure by amendment); *In re Hinkley*, 58 B.R. 339, 347 (Bankr.S.D.Tex.1986).

Though Wells Fargo may not rely on a limitations defense, this Court does agree that the Plaintiffs' class definition is overly broad due to its lack of temporal limitation. However, the Court has resolved this issue by modifying the class definition to include a five-year temporal limitation. *See supra* Part III.B.1. Therefore, the class definition, as modified by this Court, is workable.

## 3. Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments

■ In its Response, Wells Fargo also challenges the class definition based upon the Southern District of Texas' "Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments" (the Trustee's Procedures). [Adv. Docket No. 63, ¶ 15.] Plaintiffs summarized the Trustee's Procedures in their Reply in Support of the Motion for Class Certification as follows: "The gist of the particular Chapter 13 Trustee procedures provides that the Chapter 13 Trustee shall periodically notice all parties of the need to disclose any post-petition fees or expenses charged to a particular chapter 13 debtor, and absent objection, the fees and costs will be allowed." [Adv. Docket No. 71, ¶ 6.a.] The Trustee's Procedures took effect on October 17, 2005 and were subsequently amended on December 20, 2007. Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments, *available at* http://www.txs.uscourts.gov/bankruptcy/rulesformsproc/ mort_proc_redline.pdf. Therefore, those putative class members who were not subject to the Trustee's Procedures are included within the class as defined by the Plaintiffs. Those putative class members who have been subject to the Trustee's Procedures are also included within the class as defined by the Plaintiffs.

Despite the fact that the Trustee's Procedures impose particularized notification and payment procedures, nothing in the Trustee's Procedures obviates the requirements of Bankruptcy Rule 2016.[16] Even if

---

**16.** The Trustee's Procedures do not supplant Bankruptcy Rule 2016. The Federal Rules of Bankruptcy Procedure may not be replaced by local procedures. *See* Fed. R. Bankr.Proc. 9029; *see Johnson v. United States,* 460 F.3d 616, 620–21 & n. 5 (5th Cir.2006) (acknowledging that local rules must not circumvent the Federal Rules of Civil Procedure); *see*

the Trustee's Procedures impose additional obligations on creditors who wish to collect fees and costs, these procedures do not affect the applicability of Bankruptcy Rule 2016 to each purported class member. For the purposes of this lawsuit, the Plaintiffs' class definition need not distinguish between purported class members to whom the Trustee's Procedures are applicable and those to whom the Trustee's Procedures are not. The core analysis for each purported class member will, in each case, be whether Wells Fargo failed to make the requisite disclosures pursuant to Bankruptcy Rule 2016.

### 4. "Fail-safe" Definition

 Wells Fargo also asserts that Plaintiffs have proposed a "fail-safe" class definition. The prohibition on fail-safe class definitions "preclude[s] classes where 'defining the purported class ... requires addressing the central issue of liability to be decided in the case.'" *Allen v. Holiday Universal,* 249 F.R.D. 166, 175 (E.D.Pa. 2008) (quoting *Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403 (E.D.Pa.1995)). Stated differently, a fail-safe definition means "the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class." *Genenbacher v. CenturyTel Fiber Co. II,* 244 F.R.D. 485, 488 (C.D.Ill.2007) (citing *Ostler v. Level 3 Commc'ns, Inc.,* 2002 WL 31040337 (S.D.Ind.2002)). The Court concludes Plaintiffs have not proposed a fail-safe class definition because the definition does not include a legal conclusion regarding Wells Fargo's ultimate liability. Here, the definition provided by the Plaintiffs only states "Wells Fargo charged or assessed

professional fees and costs during the pendency of the bankruptcy proceeding which were never disclosed to the bankruptcy court, the debtor or other parties-in-interest; and, which were never approved by the court by written order entered in the particular bankruptcy case." [17] Additionally, the current class definition as modified by this Court is not a fail-safe definition either because none of the modifications made by the Court add language regarding Wells Fargo's ultimate liability. *See supra* Part III.B. If either definition had included a phrase asserting that Wells Fargo charged or assessed the fees and costs *in violation of Bankruptcy Rule 2016 and Section 506,* then that would have made the definition a fail-safe definition. This is so because adding the phrase "in violation of Bankruptcy Rule 2016 and Section 506" precludes the Court from making a judgment adverse to the Plaintiffs—i.e. a legal conclusion about Wells Fargo's ultimate liability would have already been made within the definition before the class action is ever tried. Here, neither the Plaintiffs' proposed class definition nor the current class definition as modified by this Court include language regarding Wells Fargo's ultimate liability; therefore, the Court concludes that the class definition is not a fail-safe definition.

### 5. Closed, Dismissed, or Converted Cases

Wells Fargo argues that the class definition proposed by the Plaintiffs is inadequate because it includes debtors whose cases have been closed, dismissed, or converted. The Court has already discussed this issue *supra* Part III.A. In short, whether the case is closed, dismissed, or

---

*also In re Killebrew,* 888 F.2d 1516, 1522 n. 15 (5th Cir.1989) ("[L]ocal rules must be consistent with the federal Bankruptcy Code and Bankruptcy Rules.").

**17.** *See supra* Part III.B.1 for an interpretation of the words "charge," "assess," and "collect."

converted has no bearing on whether the debtors in those cases may be part of a class.

For all of the above reasons, the Court concludes that the class is ascertainable and that the class definition, as modified to include the temporal limitation described *supra* in Part III.B, is proper.

## C. A Class Proceeding Is Permitted in this Court Pursuant to Rule 23(a).[18]

After properly defining the class, the Plaintiffs must demonstrate that the proposed class meets the four prerequisites of Rule 23(a): (1) numerosity—"the class is so numerous that joinder of all members is impracticable;" (2) commonality-"there are questions of law or fact common to the class;" (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) adequacy of representation—"the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

### 1. Numerosity: Class Is so Numerous that Joinder of all Members Is Impracticable.

 Rule 23(a)(1) requires that the class be so numerous that "joinder of all members of the proposed class is impracticable." There are no absolute limitations on how many or how few members of a class are necessary to satisfy this requirement. *See In re Talbert*, 347 B.R. 804. However, at a minimum, a class proponent must set forth "some evidence or reasonable estimate of the number of purported class members." *Id.* at 808; *see also Zeidman*, 651 F.2d at 1038.

Between January 1, 2005 and March 31, 2008, Wells Fargo serviced 1,752 mortgages in Chapter 13 bankruptcy cases throughout the Southern District of Texas. [Finding of Fact No. 13.] As set forth in Finding of Fact Number 13, the proposed class has approximately 1,236 members, which this Court finds to be sufficiently numerous. *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir.1999) (affirming the district court's finding that between 100 and 150 members satisfied numerosity); *In re Talbert*, 347 B.R. at 808 (a class consisting of up to eighty-eight creditors of a Chapter 7 debtor satisfied numerosity); *cf. In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60, 74 (Bankr.N.D.Tex.2000) (fifty creditors of a Chapter 11 debtor unable to satisfy numerosity); *In re Braniff Airways, Inc.*, 22 B.R. 1005, 1008 (Bankr.N.D.Tex.1982) (numerosity satisfied where the class was composed of more than 1,000 members).

 The size of a proposed class should not be the sole consideration in a numerosity evaluation. Specifically, the Fifth Circuit has stated that "[t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review of the State of Miss.*, 637 F.2d 1014, 1022 (5th Cir.1981). Such factors may include, for example, (1) the geographical dispersion of the class, (2) the ease with which class members may be identified, (3) the nature of the action, and (4) the size of each plaintiff's claim. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980); *Zeidman*, 651 F.2d at 1038; *In re Mounce*, 390 B.R. 233, 241–42 (Bankr. W.D.Tex.2008).

---

**18.** In addition to Rule 23(a), the Plaintiffs must also establish that the proposed suit falls into one of the three permissible types of class actions in Rule 23(b). *See* discussion *infra* Part III.D.

First, the geographical dispersion of the class members in this suit favors class certification. Though all class members have cases only in the Southern District of Texas, the Southern District of Texas includes over forty (40) counties and covers over 46,000 square miles. [Adv. Docket No. 71, ¶ 12]; *see also* Southern District of Texas, http://www.txs.uscourts. gov/addresses (displaying a map with the counties for the Southern District of Texas) (last visited Mar. 24, 2009); *see also* Federal Public Defender, http://www. fpdsdot.org/history.html ("The Southern District of Texas encompasses 46,610 square miles stretching from the border with Mexico to the Gulf Coast and north of Houston.") (last visited Mar. 24, 2009). The Court concludes that a class of over 1,200 plaintiffs located throughout the Southern District of Texas—a vast judicial district—is a sufficiently geographically dispersed group of individuals. Therefore, joinder of this many individuals under these circumstances would be extremely difficult without the class action.

Second, the ease of identifying class members weighs in favor of class certification. As a large financial institution, Wells Fargo assuredly maintains a record-keeping system which contains information regarding customers' mortgages serviced by Wells Fargo. In *In re Mounce*, the bankruptcy court granted in part and denied in part the debtor/plaintiff's motion for class certification[19] based upon a complaint against the plaintiff's mortgage servicing agent, Wells Fargo Home Mortgage, Inc.—the same defendant in the present suit before this Court. The *Mounce* court stated:

> By means of a class action, the class may make use (through discovery) of Wells Fargo's records to locate and contact the putative class members. Without a class action, at best, the plaintiffs could use electronic filing systems from the bankruptcy courts, but those filing systems are not so easily searched and may not contain the current addresses and contact information for potential class members. Wells Fargo, as the loan servicing agent, would be more likely to have up-to-date records.

*In re Mounce*, 390 B.R. at 242. Thus, by certifying the class in this case, Plaintiffs' counsel, using the records produced by Wells Fargo, will be able to identify other class members with relative ease. Therefore, the Court concludes that this factor weighs in favor of class certification.

Third, the nature of this action favors class certification. This case involves numerous class members who all have claims related to their bankruptcy cases. The Court finds that judicial economy is best served by adjudicating these bankruptcy issues through one class action lawsuit in this Court. Therefore, because this action involves alleged violations of the Bankruptcy Code and the Bankruptcy Rules involving a substantial number of Chapter 13 debtors spanning a five-year period, a class action is the best vehicle for resolution of this lawsuit.

Fourth, the Plaintiffs' claims in this suit are relatively small, which favors class certification. It is highly impracticable for putative class members to efficiently and

---

**19.** The *Mounce* court granted in part and denied in part the motion for class certification as follows: the Court denied it in part because (1) the plaintiff's asserted cause of action (coercion) has not been recognized by Texas courts or the Fifth Circuit, and (2) the predominate relief sought by the plaintiff was monetary in nature rather than injunctive or declaratory as required by Rule 23(b)(2). The Court granted the motion in part insofar as it certified the class under Rule 23(a) and under Rule 23(b)(3) with respect to those causes of action that are recognized under Texas law: namely, breach of contract and fraud.

economically prosecute this action individually because of the high costs of litigation in comparison to the small amount of potential recovery to each class member. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997)). Here, the Court concludes that the numerosity prerequisite is satisfied.

### 2. Commonality: There Are Questions of Law or Fact Common to the Class.

 Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The various issues and claims need not be identical. *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993). Rather, "[t]he commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997) (citing *Forbush,* 994 F.2d at 1106).

*In re Talbert* is illustrative of this commonality element. 347 B.R. 804 (Bankr. E.D.La.2005). In *Talbert,* commonality was satisfied as to a proposed class of Chapter 7 creditors even though some of the creditors had previously been repaid. *Id.* at 809. Specifically, the court reasoned that if a single issue would "affect all or a significant number of the putative class members," commonality was satisfied. *Id.* Further, the court noted that while some

creditors had been repaid and some had not, each potential class member was owed lost interest. *Id.* Based solely upon this finding, commonality was satisfied. *Id.*

 Here, commonality can be determined based upon the statistical sampling provided by Wells Fargo. Specifically, the Plaintiffs requested data on putative class members and Wells Fargo provided that data. [Finding of Fact No. 10.] Plaintiffs then used the sample set to make predictions about the population—i.e. all the potential class members who fall within the class definition. [Finding of Fact No. 13.] Even though some class members have already paid Wells Fargo all or a portion of the fees Wells Fargo charged to their accounts, all were subjected to the same harm and all will benefit from the injunctive relief sought by the Plaintiffs. Each of the putative class members had, or continues to have, their mortgages serviced or held by Wells Fargo and were each charged fees and other costs associated with their mortgages. If "there are clear, common issues which will affect the outcome for most, if not all, of the putative class members' claims," then the commonality prerequisite is met. *See In re Mounce,* 390 B.R. at 242. Here, the Court concludes that the commonality prerequisite is satisfied.

### 3. Typicality–Rule 23(a)(3): The Claims or Defenses of the Representative Parties Are Typical of the Claims and Defenses of the Class.

 Typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). The typicality analysis focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *In re Mounce,* 390

B.R. at 243 (quoting *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596–97 (7th Cir.1993)). Even if there are factual distinctions between the claims of the named plaintiffs and those of the putative class members, the typicality requirement may still be satisfied. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

A proper class representative must "possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Factual differences between the class representative and the class as a whole will not defeat certification if all claimants assert the same legal theory and their claims arise from a similar course of conduct. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.2001). As such, "class representatives [should] establish the bulk of the elements of each class members' claims when they prove their own." *Durrett v. John Deere Co.*, 150 F.R.D. 555, 558 (N.D.Tex.1993).

In *Talbert*, class proponents satisfied typicality by setting forth minimal factual similarities (in the absence of material factual or legal differences). *In re Talbert*, 347 B.R. at 808. Specifically, typicality was established through a showing that all of the potential class members (including the class representative) participated in an employee benefit plan for which the Chapter 7 debtor defendant was trustee, and that their plan contributions were not properly dealt with during the pertinent period. *Id.*

In the suit at bar, the named Plaintiffs, like the putative class members, filed their respective Chapter 13 bankruptcy petitions in the Southern District of Texas. [Finding of Fact No. 2.] The Plaintiffs allege that they, like the many other debtors who are putative class members, were charged undisclosed fees and costs by Wells Fargo during the pendency of their Chapter 13 cases. [Finding of Fact No. 3.] Based on the facts described above and the modified class definition, the Court concludes that the Plaintiffs' claims have the same essential characteristics as the class at large; therefore, the typicality prerequisite is satisfied.

**4. Adequacy of Representation— Rule 23(a)(4): The Representative Parties will Fairly and Adequately Protect the Interests of the Class.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This element must be satisfied to protect the "due process rights of the absent members of the class." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 133 (5th Cir.2005). The Fifth Circuit's "generic standard" for this adequacy requirement is as follows: "'the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation.'" *Id.* at 129–30 (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482–83 (5th Cir.2001) (internal marks omitted)). This adequacy requirement "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir.1982); *see also Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir.2007); *see also Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112 (5th Cir.1978) ("The relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representa-

tion."). Moreover, any conflicts of interest between the named parties and the class as a whole should be considered in this evaluation. *Amchem Prods., Inc.,* 521 U.S. at 594, 117 S.Ct. 2231.

At the hearing held on October 31, 2008, Wells Fargo's counsel, Thomas A. Connop, stated in open court that "adequacy of representation is not an issue." [tape recording of hearing from Oct. 31, 2008.] Thus, Wells Fargo has stipulated to this element.

## D. Maintaining a Class under Rule 23(b)

After demonstrating that the proposed class meets all four of the prerequisites of Rule 23(a), the Plaintiffs must also show that the class qualifies as one of the three types of class actions maintainable under Rule 23(b). The Plaintiffs in this case do not seek certification under (b)(1), but they do seek certification under subsections (b)(2) and (b)(3).

### 1. Injunctive or Declaratory Relief under 23(b)(2)

 Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if ... the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "This class action mechanism is appropriate where broad, class-wide injunctive or declaratory relief is moved for, because these actions involve uniform, group remedies." *Stoffels v. SBC Commc'ns, Inc.,* 238 F.R.D. 446, 457 (W.D.Tex.2006). While certification under this rule is centered around injunctive relief, a Rule 23(b)(2) certification may also be appropriate when the class seeks monetary relief, so long as the monetary relief does not predominate over the equitable relief sought. *Humphrey v. United Way of Tex. Gulf Coast,* 2007 WL 2330933, at *8 (S.D.Tex.2007).

In pertinent part, the Fifth Circuit has stated:

monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998) (internal citations omitted).

*In re FIRSTPLUS Financial, Inc.,* 248 B.R. 60 (Bankr.N.D.Tex.2000) is instructive on this point. In *FIRSTPLUS,* creditors sought class certification in a suit against a Chapter 11 debtor. *Id.* at 64. The class proponents alleged, among other things, violations of the Truth in Lending Act and racketeering. The plaintiffs sought restitution of improper charges, an injunction against further malfeasance, at-

torneys' fees, and damages (including punitive damages and treble damages). *Id.* at 66. In considering class certification under Rule 23(b)(2), the court reasoned that the plaintiffs set forth "major demands for monetary relief," and, as such, "the declaratory relief sought [did] not predominate over [the] potentially huge money demands." *Id.* at 76. Therefore, the court in that case declined to certify the class under Rule 23(b)(2).

■ Unlike *FIRSTPLUS,* this Court, in a previous ruling in this suit, found that, based on the causes of action contained in the Complaint, the Plaintiffs "seek exclusively equitable relief based upon alleged violations of § 506(b) and Rule 2016, and seek no legal relief based upon a breach of contract theory." *Wilborn v. Wells Fargo (In re Wilborn),* Adv. No. 07–3481, 2008 WL 2078089, at *4 (Bankr.S.D.Tex. May 15, 2008). Punitive damages would make this class action too individualized, and, therefore, if the Plaintiffs seek to recover punitive damages in this suit, the relief would not be overwhelmingly injunctive or declaratory. The Plaintiffs' request for disgorgement is a form of equitable relief. As the Fifth Circuit has explained, "Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs."

*Allstate Ins. Co. v. Receivable Fin. Co., LLC,* 501 F.3d 398, 413 (5th Cir.2007) (citing *SEC v. Huffman,* 996 F.2d 800, 802 (5th Cir.1993)). The Plaintiffs here seek no damages.[20] If Wells Fargo obtained monies in violation of Code and Rule provisions, this Court has broad authority under § 105(a) to order disgorgement of those monies. *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007); *In re Rodriguez,* 396 B.R. 436, 456–57 (Bankr.S.D.Tex.2008) (citing *In re Padilla,* 379 B.R. 643, 667–68 (Bankr.S.D.Tex.2007)). Additionally, the amounts to be disgorged can be calculated with relative ease based upon simple mathematical formulas. For example, to calculate the disgorgement amount, the formula will be: Fees Collected minus Fees Approved. To calculate the amount to be enjoined, the formula will be: Fees Charged minus Fees Approved. With these formulas, individual testimony on amounts to be disgorged and amounts for which Wells Fargo is to be enjoined from collecting is unnecessary because all of the figures can either be obtained from either Wells Fargo's records or the Court's docket. Because the amounts can be calculated with mathematical certainty and because final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, the proposed class

**20.** In their Complaint, on page 2, in paragraph 3 (in the section entitled "Introduction"), the Plaintiffs reference punitive damages. However, on page 15, in the section entitled "Damages/Sanctions," there is no reference to punitive damages. Moreover, *most importantly,* in the prayer paragraph of the Complaint, on pages 15–16, the Plaintiffs do *not* request punitive damages. Accordingly, this Court construes the Complaint to be requesting no punitive damages, but rather to be requesting only the following equitable relief: (1) a declaratory judgment that any undisclosed fees and costs are *per se* unreasonable; (2) any undisclosed fees and costs that

have actually been collected should be disgorged; (3) a permanent injunction should be put into effect enjoining Wells Fargo from charging or collecting undisclosed fees and expenses; (4) imposing sanctions on Wells Fargo for intentional disregard of the Bankruptcy Code and the Bankruptcy Rules; (5) awarding prejudgment and postjudgment interest on any monies that are disgorged; (6) awarding attorneys' fees and costs to the Plaintiffs for prosecuting the Complaint; and (7) granting such other and further relief as the Plaintiffs may show themselves justly entitled. [Adv. Docket No. 1.]

satisfies the requirements of 23(b)(2) in addition to 23(a).

## 2. Predominance and Superiority under 23(b)(3)

 In the alternative, the proposed class may be certified under Rule 23(b)(3). Rule 23(b) provides that:

A class action may be maintained if Rule 23(a) is satisfied and if ... the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b). As such, a Rule 23(b)(3) class proponent must satisfy two basic elements: predominance and superiority. *Regents of Univ. of Ca. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 382 (5th Cir.2007). Here, both elements are met.

### a. Predominance

 An inquiry into whether common questions of fact and law predominate over issues affecting only individuals "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc.*, 521 U.S. at 623, 117 S.Ct. 2231. To establish predo-

minance, a class proponent must make a greater showing than that required to satisfy the commonality requirement. *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir.2007).

 This evaluation "requires that the court inquire how the case will be tried." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir.2003) (citing *Castano*, 84 F.3d at 744); *see also Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem.*, 319 F.3d 205, 218 (5th Cir. 2003) ("To decide whether common issues predominate, the district court must consider how a trial on the merits would be conducted if a class were certified.").

The primary question that the Court will need to resolve at trial is whether Wells Fargo improperly charged fees and expenses to the putative class members in violation of 11 U.S.C. § 506 or Bankruptcy Rule 2016. Further, the Court must "understand the claims, defenses, relevant facts, and substantive law presented in the case." *O'Sullivan*, 319 F.3d at 738 (quoting *Castano*, 84 F.3d at 744). After establishing this understanding, the Court must identify the outcome determinative issues, assess the issues that will predominate at trial, and determine which of these issues are common to the proposed class. *Id.*

Wells Fargo argues that common issues do not predominate. [Adv. Docket No. 63, ¶ 35.] For example, in its Response, Wells Fargo alleges that "[o]ut of all of the potential class members, a number will have entered into loan modifications (like Wilborn), others may have sold their homes outside of bankruptcy (like Martin), others will have had the questioned fees and costs approved by the bankruptcy court (like the Flournoys), and others may have had the court lift the stay to allow foreclosure." [Adv. Docket No. 63, ¶ 37.] While the Court recognizes that differing events may

have occurred within each particular individual's bankruptcy case, the Court disagrees with Wells Fargo's contention that individual issues predominate the subject matter that will be relevant to this lawsuit. Because the Plaintiffs all have fees and costs charged to their accounts by Wells Fargo during the pendency of their bankruptcy cases, common questions of law or fact do indeed predominate over individual issues. Therefore, the Court concludes that the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc.,* 521 U.S. at 623, 117 S.Ct. 2231. The Court concludes that, despite the individualized issues that Wells Fargo has mentioned, the predominance element of Rule 23(b)(2) is met.

### b. Superiority

The analysis of whether a class action is a superior form of adjudication commonly consists of an application of the four pertinent matters listed in Rule 23(b)(3): (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. *See, e.g., Recinos–Recinos v. Express Forestry, Inc.,* 233 F.R.D. 472, 482 (E.D.La. 2006); *In re Talbert,* 347 B.R. at 810. The Court concludes that all four factors weigh in favor of class certification. First, because of the small individual claims, it makes the most economic sense for the class members to prosecute their cause of action as a class rather than individually. [Finding of Fact No. 17.] Second, the Plaintiffs, on behalf of themselves and those similarly situated, filed this adversary proceeding against Wells Fargo on November 16, 2007. [Finding of Fact No. 1.] Since that date, much litigation concerning the parties has occurred in this Court. The Court is unaware of any other outstanding suits by putative class members against Wells Fargo under the same theory present in this suit. Third, concentrating the litigation of the claims in this Court maximizes judicial efficiency and economy as this Court is already familiar with the facts and the issues in this suit. Fourth and finally, as of the undersigned date, the Court does not anticipate significant difficulties with class management based upon the issues presented and the relief requested. Therefore, because all four factors of Rule 23(b)(3) favor class certification, the proposed class action is the superior method for adjudicating this lawsuit.

In addition to the enumerated considerations in Rule 23(b)(3), courts have considered the costs and logistical inconvenience associated with joinder or multiple individual lawsuits in determining whether a class action is superior. *See Bywaters v. United States,* 196 F.R.D. 458, 470 (E.D.Tex.2000).

Further, the greatest indication that a class action would be superior to other available methods of adjudication is a "negative value suit." *Norwood v. Raytheon Co.,* 237 F.R.D. 581, 604 (W.D.Tex.2006). "A 'negative value suit' is a case 'in which the costs of enforcement in an individual action would exceed the expected individual recovery.'" *Id.* (quoting *In re Inter–Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 348 (N.D.Ohio 2001)). "If potential damages recoverable by class members are substantial, the lawsuit does not qualify as a negative value suit." *Corley v. Entergy Corp.,* 220 F.R.D. 478, 489 (E.D.Tex.2004).

In the suit at bar, the claims of the putative class members can be easily calculated and, as previously stated in this opinion, are in small amounts that make it uneconomical for individuals to pursue the claims on their own. [Finding of Fact No. 17.] Litigation costs would very likely exceed the individual recovery amounts. Because the fees and costs charged range from $0 to $2,600.00, and because attorneys' fees for an adversary proceeding could be well in excess of $2,600.00 over the life of the suit, a class action is the more economical and efficient way for these Plaintiffs to prosecute their claims against Wells Fargo. Moreover, many of the over 1,200 putative class members may not have access to counsel to pursue their claims outside of the class. Therefore, a class action is the superior method of litigating this matter.

Thus, certification of the proposed class under Rule 23(b)(3) is proper, as is certification under Rule 23(b)(2).

## IV. CONCLUSION

Whether the Plaintiffs and the members of the class are actually entitled to the relief they seek will be determined at trial. Based upon the Court's analysis in this Memorandum Opinion, the proposed class meets all requirements for certification. Accordingly, the Motion for Class Certification is granted. An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

## ADDENDUM A

*WILBORN v. WELLS FARGO, ADVERSARY NO. 07-3481*

| Lead Plaintiffs | Recoverable BK Fees On DDCH | BK Case # | Any Order Approving Fees? |
|---|---|---|---|
| Flournoy | $3,271.42 | 03–38670 | YES ($600.00) |
| Martin | $2,085.25 | 03–40820 | YES ($450.00) |
| Martin | $1,225.09 | 05–81390 | NO |
| Wilborn | $3,524.70 | 03–48263 | NO |

**Explanation of Chart Below:** The following information is a summary of two (2) distinct sets of data for the same 68 debtors—the information on the left summarizes bankruptcy fee information from random Corporate Advance reports provided by Wells Fargo for chapter 13 debtors in the Southern District Of Texas. The information does not identify the individual debtor. The information on the right side of the sheet is for the same debtors, however it does not necessarily correspond to the Corporate Advance information directly to it's left. Same debtors, two (2) different sets of information.

| Debtor/ Debtor ID | Recoverable BK Fees On DDCH | | BK Case # | Any Order Approving Fees? |
|---|---|---|---|---|
| WF1591–WF1595 | $2,233.72 | ≫ Data Does Not Correspond ≪ | * * * * | YES |
| WF1630–WF1636 | $2,695.98 | | * * * * | YES |
| WF1707–WF1711 | $1,650.00 | | 00–35147 | YES |
| WF1769–WF1770 | $ 150.00 | | 01–41467 07–30057 | NO |
| WF18–131816 | $1,547.25 | | 02–21889 | YES |
| WF1871 | $ 150.00 | | 03–30399 | NO |
| WF1904–WF1906 | $1,136.38 | | 03–31156 | YES |
| WF1953–WF1954 | $ 629.50 | | 03–31518 | YES |

| Debtor/ Debtor ID | Recoverable BK Fees On DDCH | | BK Case # | Any Order Approving Fees? |
|---|---|---|---|---|
| WF1977–WF1980 | $1,019.98 | | 03–34471 | YES |
| WF2015–WF2023 | $1,445.64 | | 03–34712 | NO |
| WF2092 | $ 611.50 | | 03–34766 | NO |
| WF2107–WF2113 | $2,168.58 | | 03–34806 | NO |
| WF2175–WF2176 | $ 629.50 | ≫ Data Does Not Correspond ≪ | 03–35586 | YES |
| WF22119–WF2224 | $1,584.14 | | 03–35687 | YES |
| WF2277–WF2279 | $ 940.68 | | 03–45134 | YES |
| WF2307 | $ 125.00 | | 03–45609 | NO |
| WF2336 | $ 0.00 | | 03–45611 | YES |
| WF2337–WF2339 | $ 938.30 | | 04–21191 05–20507 | NO |
| WF2427–WF2433 | $ 150.00 | | 04–30944 | YES |
| WF2481–WF2486 | $ 750.00 | | 04–41398 | NO |
| WF2516–WF2517 | $ 150.00 | | 04–43769 | NO |
| WF2565–WF2567 | $ 500.00 | | 04–45238 | NO |
| WF2604–WF2608 | $ 500.00 | | 04–45720 | NO |
| WF2629–WF2633 | $ 150.00 | | 05–10828 | NO |
| WF2673–WF2675 | $ 300.00 | ≫ Data Does Not Correspond ≪ | 05–10991 06–10469 | NO |
| WF2728–WF2729 | $ 150.00 | | 05–21493 | NO |
| WF2762 | $ 150.00 | | 05–31875 | YES |
| WF2789 | $ 250.00 | | 05–36942 | YES |
| WF2816 | $ 250.00 | | 05–37027 98–35445 | NO |
| WF2835–WF2837 | $ 250.00 | | 05–39102 | YES |
| WF2870–WF2874 | $ 475.00 | | 05–71295 | NO |
| WF2916–WF2918 | $ 895.00 | | 05–80861 | NO |
| WF2936 | $ 300.00 | | 05–82857 | NO |
| WF2971–WF2974 | $1,210.25 | | 05–83409 | NO |
| WF3012–WF3013 | $ 300.00 | | 06–10628 | YES |
| WF3054 | $ 150.00 | | 06–10661 | NO |
| WF3100–3105 | $1,210.00 | ≫ Data Does Not Correspond ≪ | 06–30860 | NO |
| WF3153–3156 | $ 325.00 | | 06–31313 | NO |
| WF3204 | $ 250.00 | | 06–33583 | NO |
| WF3239–WF3240 | $ 300.00 | | 06–35066 | NO |
| WF3281–WF3284 | $ 250.00 | | 06–36239 | NO |
| WF3328–WF3329 | $ 125.00 | | 06–36679 | NO |
| WF3355–WF3356 | $ 250.00 | | 06–36693 06–36783 | NO |
| WF3392–WF3394 | $ 250.00 | | 07–31220 | NO |
| WF3425 | $ 250.00 | | 06–36878 | NO |
| WF3446–WF3449 | $ 400.00 | | 06–70327 | NO |
| WF3473 | $ 150.00 | | 06–80270 | NO |

| Debtor/ Debtor ID | Recoverable BK Fees On DDCH | | BK Case # | Any Order Approving Fees? |
|---|---|---|---|---|
| WF3491 | $ 250.00 | ≫ Data Does Not Correspond ≪ | 07–20173 | NO |
| WF3515 | $ 300.00 | | 07–20589 | NO |
| WF3552 | $ 250.00 | | 07–30037 | NO |
| WF3570–WF3576 | $ 310.00 | | 07–31023 | NO |
| WF3620 | $ 650.00 | | 07–34425 | NO |
| WF3656–WF3659 | $ 250.00 | | 07–34436 | NO |
| WF3695–WF3697 | $1,150.00 | | 07–36152 | YES |
| WF3735 | $ 250.00 | | 07–37621 | NO |
| WF3764–WF3766 | $2,073.88 | | 07–38191 08–32188 | NO |
| WF3794–WF3796 | $ 510.00 | | 07–38196 | NO |
| WF3852–WF3855 | $ 250.00 | | 07–38400 | NO |
| WF3882–WF3884 | $ 250.00 | | 07–38936 | NO |
| WF3914–WF3915 | $ 250.00 | | 07–80051 | NO |
| WF3930–WF3931 | $ 250.00 | ≫ Data Does Not Correspond ≪ | 07–80298 | NO |
| WF3951–WF3954 | $1,150.00 | | 07–80666 | NO |
| WF4005–WF4007 | $ 500.00 | | 08–30597 | NO |
| WF4025 | $ 0.00 | 68 Debtors less 2 with no fees = 66 | 08–30616 | NO |
| WF4042–WF4043 | $ 250.00 | 66 Remaining Debtors less 17 that had fees approved = 49 | 08–70082 | NO |
| WF4069 | $ 250.00 | 49 Debtors with fees and no approval | 08–80077 | NO |
| WF4114–WF4115 | $ 300.00 | 49 / 68 = 72.06% | 08–80121 | NO |
| WF4142–WF4143 | $ 250.00 | | 96–20792 97–20792 | NO |

Sixty–six (66) of the sixty-eight (68) random debtors from the Southern District Of Texas were charged bankruptcy fees and/or costs during their chapter 13 proceeding

Wells Fargo stipulates that they had 1,752 loans in chapter 13 bankruptcy in the Southern District Of Texas with case filing dates from 1/1/2005 through 3/31/2008. Assuming the class was limited to this period alone, the class should include approximately 1,261 debtors (1,752 X .72).

Seventeen (17) of the sixty-eight (68) random debtors had Tees/ costs approved for Wells Fargo, in some amount, in their chapter 13 proceeding. For this analysis, it is assumed that if any fees were approved, ALL fees and costs were approved.

## ADDENDUM B

*WILBORN v. WELLS FARGO, ADVERSARY NO. 07–3481*

| Debtor | Case Number | Date 13 Filed | Date 13 Terminated | Fees Charged | Fees Approved | Fees Collected | Disgorgement Amount | Amount Enjoined |
|---|---|---|---|---|---|---|---|---|
| Karlton & Monica Flournoy | 03–38670 | 6/16/2003 | 10/7/2008 | $3,146.46 | $600.00 | $ 585.91 | $ 0.00 | $2,546.46 |
| Judy Martin | 03–40820 | 8/1/2003 | 4/26/2005 | $2,085.25 | $450.00 | $1,040.76 | $ 590.76 | $1,635.25 |
| Judy Wilborn | 03–48263 | 12/31/2003 | Pending | $4,024.70 | $ 0.00 | $3,917.91 | $3,917.91 | $4,024.70 |
| Judy Martin | 05–81390 | 5/11/2005 | Pending | $1,225.09 | $ 0.00 | $2,469.06 | $2,469.06 | $1,225.09 |